## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF WISCONSIN

GARRETT M. FERGUSON,

        Plaintiff,

    v.                                  Case No. 19-C-1320

KEVIN T. LAMORA,

        Defendant.

## DECISION AND ORDER DENYING DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Plaintiff Garrett Ferguson, who is currently serving a state prison sentence at Oshkosh Correctional Institution, filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Kevin Lamora violated his constitutional rights when Officer Lamora used excessive force against him. This matter comes before the court on Officer Lamora's motion for summary judgment. For the following reasons, the motion will be denied.

### BACKGROUND

Ferguson was an inmate at Oshkosh Correctional Institution at all times relevant to this matter. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, Dkt. No. 51. On April 26, 2018, Ferguson was found in violation OSCI rules for possessing a contraband tattoo gun. *Id.* ¶¶ 3–4. A team of correctional officers approached Ferguson's cell, which was located in the Q Building, and ordered Ferguson to exit his cell to be transported to temporary lock up for possession of contraband. *Id.* ¶ 6; Def.'s Proposed Findings of Fact (DPFOF) ¶ 2, Dkt. No. 31. Ferguson became agitated because he knew that by being transported to the Restrictive Housing Unit (RHU), he would not be able to have a phone call with his daughter, which was scheduled for that day. PPFOF ¶ 9.

Officer Lamora contends that Ferguson disobeyed the directive to leave his cell and told officers he was going to make them suit up and spray him. DPFOF ¶ 3. An officer handcuffed Ferguson's hands behind his back in his cell. *Id.* ¶ 4; PPFOF ¶ 7. Once handcuffed, staff walked Ferguson out of his cell while Ferguson resisted. DPFOF ¶ 5. Staff placed a little pressure to Ferguson's wrist and hand area to gain compliance. *Id.* ¶ 6. Ferguson continued to resist until he was placed in the back of a van for transport to RHU. *Id.* During the escort, Ferguson yelled threats at staff. *Id.* ¶ 7. Ferguson contends that he did not physically resist while in the Q Building or on the way to the transport van. PPFOF ¶ 11.

After being placed in the van, Ferguson kicked the cage in the van two or three times. *Id.* ¶ 12; DPFOF ¶ 8. Once they arrived at RHU, Lieutenant Dusty Gross, Officer Lamora, and four other officers escorted Ferguson out of the van and into the building, and Ferguson said he would refuse to be strip searched. DPFOF ¶ 9. While escorting Ferguson to Cell 101 for a strip search, Ferguson used dead weight tactics by sitting on the floor to prevent being escorted. *Id.* ¶ 10. The parties dispute what occurred next.

According to Ferguson, two correctional officers placed their hands under his armpits, Officer Lamora grasped his right wrist and arm from directly behind him, and all three officers lifted Ferguson to his feet. PPFOF ¶ 16. After Ferguson was on his feet and cooperating with staff, Officer Lamora continuously increased the pressure he was putting on Ferguson's wrist and arm. Officer Lamora then violently twisted Ferguson's right hand and arm, causing the handcuffs to dig further into Ferguson's right wrist and causing him considerable amounts of pain. *Id.* ¶ 18. Ferguson asserts that the amount of force used lifted his feet off the ground and caused the other officers to stumble. *Id.* ¶¶ 19–20. Ferguson indicated to Officer Lamora and the other officers that he was in pain. *Id.* ¶ 22. He heard one correctional officer tell Officer Lamora to stop applying

pressure to Ferguson's wrists, and Lieutenant Gross physically pulled Officer Lamora off of Ferguson. *Id.* ¶¶ 24–25.

Officer Lamora denies that Ferguson was cooperating, that he violently twisted Ferguson's wrist, and that an officer told him to stop. Def.'s Resp. to PPFOF ¶¶ 17–18, 24, Dkt. No. 58. He contends that staff applied pressure to Ferguson's hand and wrist area to gain control of him and that Ferguson directed his anger toward Officer Lamora, stared at him, threatened to assault him, and shouted profanities. DPFOF ¶¶ 11–12. He asserts that, because there was enough staff to continue the escort without Officer Lamora, Lieutenant Gross relieved Officer Lamora in order to deescalate the situation, which is a normal tactic. *Id.* ¶ 13.

Medical staff subsequently assessed Ferguson's injuries and took pictures of his wrist, which was red. PPFOF ¶¶ 35–36. Ferguson lost feeling in his thumb, had pain in his wrist for weeks, and had residual pain for months. *Id.* ¶ 37. He asserts that he continues to have numbness in his right thumb. *Id.* ¶ 38.

## LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). In response to a properly supported motion for summary judgment, the party opposing the motion must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than

3

simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Ferguson asserts that Officer Lamora used excessive force during his escort to the strip search cell. "The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the 'unnecessary and wanton infliction of pain' on prisoners." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Not every "malevolent touch by a prison guard" violates the Eighth Amendment. *Hudson*, 503 U.S. at 9. "The use of *de minimis* force, so long as it 'is not a sort repugnant to the conscience of mankind,' is not of Eighth Amendment concern." *Lewis v. Downey*, 581 F.3d 467, 475 (7th Cir. 2009) (quoting *Hudson*, 503 U.S. at 9–10). When the force is more than *de minimis*, however, the primary inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See Hudson*, 503 U.S. at 6. In answering this question, the court must consider the following factors: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the officials responsible on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response. *Whitely v. Albers*, 475 U.S. 312, 321 (1986).

Officer Lamora maintains that his use of force was necessary and reasonable due to Ferguson's insubordination, physical resistance, and threats. Ferguson argues, however, that

4

Officer Lamora did not have reason to apply force because he stopped resisting and was cooperative at the time the force was used. Any force used against a prisoner must be applied in a good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 6. Given the factual dispute raised by Ferguson, a reasonable jury could conclude that Officer Lamora had no penological justification for any use of force. Although Officer Lamora submitted a video from a hallway camera that captured the incident, the recording is not conclusive evidence that Officer Lamora did not use excessive force. In short, the court concludes that Ferguson has raised a genuine dispute of fact as to whether he was resistive at the time the force was used such that the force was applied in a good-faith effort to restore discipline.

Alternatively, Officer Lamora asserts that he is entitled to qualified immunity. The doctrine of qualified immunity shields government officials from civil liability insofar as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to overcome a defense of qualified immunity, the plaintiff must point to "'a clearly analogous case establishing a right to be free from the specific conduct at issue'" or show "that 'the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights.'" *Gonzalez v. City of Elgin*, 578 F.3d 526, 540 (7th Cir. 2009) (quoting *Smith v. City of Chicago*, 242 F.3d 737, 742 (7th Cir. 2001)). "Although qualified immunity is a defense to a § 1983 suit, the burden of meeting the elements of this two-part test rests on the plaintiff." *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). In this case, a reasonable jury could conclude that Officer Lamora used excessive force against Ferguson without having a reasonable basis for doing so. *See Hill v. Shelander*, 992 F.2d 714, 718 (7th Cir. 1993) ("[I]f the finder of fact were to decide that [the defendant] acted with

Case 1:19-cv-01320-WCG   Filed 11/04/20   Page 5 of 6   Document 66

malicious intent, there could be no question that a reasonable prison sergeant should reasonably have known that the conduct described by [the plaintiff] violated the eighth amendment."). Accordingly, Officer Lamora is not entitled to summary judgment based on qualified immunity.

## CONCLUSION

For these reasons, Officer Lamora's motion for summary judgment (Dkt. No. 37) is **DENIED**. The Clerk is directed to set this matter on the court's calendar for further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 4th day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

6